STATE OF NORTH CAROLINA     FILED    IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF FORSYTH    2022 JAN 24   1:45    FILE NO: 22 CVS 30

BECKIE JOHNSON, )
)
    Plaintiff,    FORSYTH CO., C.S.C. )
     BY _____ )
v. )     COMPLAINT
)
ECLIPSE SENIOR LIVING, INC., AND )
ELMCROFT OF FLORENCE, LP, )
)
    Defendants. )

---

The plaintiff, complaining of defendants, alleges the following:

## NATURE OF ACTION

1. Plaintiff has instituted this action pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and the public policy of North Carolina, to recover damages for the violation of her civil rights.

## PARTIES

2. The plaintiff, Beckie Johnson, is a resident of Randolph County, North Carolina. At all times pertinent to this action, plaintiff was an "employee" of defendants within the meaning and definition of the ADEA, 29 U.S.C. § 630(f), and the common law of North Carolina.

3. The defendant, Eclipse Senior Living, Inc. ("Eclipse"), is a company incorporated in Delaware and its principal office in Lake Oswego, Oregon. Eclipse owns, operates, and manages senior living communities in North Carolina, the southeast, and across the United States. Eclipse has facilities in multiple counties of North Carolina, including Mecklenburg, Wake, and Moore.

4. The defendant, Elmcroft of Florence, LP ("Elmcroft"), is a Limited Partnership incorporated in Delaware with its principal place of business in Greenville, South Carolina. Elmcroft is a senior living community that is owned, managed, and operated by Eclipse, and was one of the facilities in which plaintiff worked during her tenure with defendants.

5. Upon information and belief, Eclipse Senior Living, Inc. and Elmcroft of Florence, LP are alternative names for plaintiff's employer and, in whole or in part, act as alter egos for one another.

6. Upon information and belief, the named defendants, in whole or in part, operate as an integrated enterprise, and have common management, centralized control, and have a distinct identity of interest with each other.

7. Hereinafter, unless otherwise specified, the named defendants shall be referred to collectively as "defendant." At all times pertinent to this action, defendant employed over 100 employees, and was the "employer" of plaintiff within the meaning and definition under the ADEA, 29 U.S.C § 630(b), and pursuant to North Carolina law.

## FACTS

8. Plaintiff was born in 1952, and is presently 69 years of age. At the time of her termination plaintiff was 67 years of age.

9. Plaintiff was employed by defendant from February, 2019 until June, 2020.

10. Plaintiff's position throughout her tenure with defendant was as an Operations Specialist. Plaintiff's position as an Operations Specialist ("OS") required her to service 13 of defendant's facilities throughout five states in the eastern United States. Plaintiff routinely visited facilities to ensure compliance to state regulations and company standards of operation, eliminated operational difficulties, consulted with the management of those facilities, assumed

Executive Director duties within the facilities when necessary, and generally acted as liaison between the facilities and defendant's management team.

11. At all times during plaintiff's employment, and by all objective measures, plaintiff met or exceeded any reasonable expectations of her employer in the performance of her duties. Indeed, throughout the time she worked for defendant, plaintiff's performance was never criticized or questioned in any significant way. In February, 2020, in her final annual review, defendant's management issued a positive performance review of plaintiff, and increased her salary.

12. Throughout her tenure with defendant, plaintiff consistently ensured compliance with all facilities in her region, performed all of her duties with diligence and care, and utilized the immense knowledge she had gained during her time working in the industry. Indeed, it was plaintiff's extraordinary expertise—in part gained from 20 years as director of a four-star assisted living facility—that led defendant to recruit plaintiff in early 2019.

13. Nevertheless, in the early part of 2020, defendant made significant changes to its management structure. Specifically, in or about March, 2020, plaintiff began reporting to a new Regional Director of Operations (RDO), who was significantly younger than plaintiff.

14. Soon after the new RDO assumed his position, plaintiff noted a shift in attitude from defendant's management team. Although her performance was not specifically questioned, she began to be marginalized in her position. She was left out of meetings, excluded from important processes—such as interviews for new hires—and generally treated disrespectfully.

15. In or about March, 2020, the new management team hired a second OS for the region. The woman who was hired was approximately 30 years younger than plaintiff, and had far less experience. The possibility of hiring a second OS for the region (which, upon

information and belief, was unprecedented in regards to defendant's operations) was never discussed with plaintiff. The young woman would be plaintiff's replacement.

16. Shortly after the young woman was trained, plaintiff's performance was questioned for the first time. While working at one of defendant's facilities that had significant problems, including numerous and consistent violations of state and federal laws and regulations, she informed defendant's management team of the many issues she encountered at the facility.

17. Specifically, plaintiff noted that two of defendant's facilities had numerous ongoing issues including, but not limited to, HIPPA violations, labor law violations, resident's rights violations, health code violations, and other issues.

18. Plaintiff justifiably understood that her communications regarding the problems at defendant's facility angered defendant's management team. She also came to understand that the young, inexperienced woman would be her replacement.

19. In June, 2020, the RDO eventually manufactured false allegations about plaintiff's leadership within the problematic facility. Although he went to the facility to purportedly interview employees there about plaintiff's leadership, he never—at any time—substantively addressed the allegations with plaintiff.

20. A few days after, on or about June 30, 2020, plaintiff was terminated from her position, allegedly because she was "not a fit for leadership of the company." Defendant did not offer plaintiff an alternative comparable position nor did defendant's management substantively address their rationale for the termination.

21. Defendant's purported reasons for plaintiff's termination were pretextual, and not worthy of belief.

22. Defendant's actions constituted retaliation for the issues she communicated to management regarding the problematic facilities, and constituted discrimination based on her age.

23. Over her tenure with defendant, and until her termination, plaintiff always received praise and commendations for her work, served defendant with dedication and commitment, and performed all of her duties with excellence.

24. Plaintiff was substantially older and more experienced than many of the employees that worked in her department, including both her supervisor and her replacement.

25. As a result of the conduct of defendant's management, plaintiff has suffered the loss of her career, severe emotional distress, and other damages.

**Administrative Remedies**

26. On or about September 29, 2020, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff's charge alleged discrimination due to age, in violation of the ADEA. On or about December 17, 2020, plaintiff filed an Amended Charge with the EEOC. As alleged in her Charge, the discrimination based on age culminated in the termination of her employment by defendant. Plaintiff was issued a right to sue by the EEOC on October 6, 2021. Plaintiff has complied with all procedural prerequisites to filing this action.

**FIRST CLAIM FOR RELIEF**
**Age Discrimination in Violation of the ADEA**

27. Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

28. At all times pertinent to this action, plaintiff was within the protected age category, and subject to the protection of the ADEA; her performance was superior to that of substantially younger employees who were retained, and exceeded any reasonable expectations

of defendant; and subsequent to her discharge, a substantially younger employee who was less experienced and qualified for the job, assumed her duties while performing at a lower level than plaintiff.

29. Defendant's reasons for its termination of plaintiff were pretextual, and unworthy of belief.

30. Defendant wrongfully and intentionally discriminated against plaintiff because of her age, in violation of the ADEA, 29 U.S.C. § 621 *et seq.*, as follows:

   a. By hiring a second OS for plaintiff's region in order to terminate plaintiff;

   b. By selecting a replacement that was substantially younger, less qualified, less experienced, and was a poorer performer;

   c. By failing to offer plaintiff a comparable alternative position with the company;

   d. By manufacturing multiple false and baseless reasons for the termination; and

   e. In terminating plaintiff's employment.

31. As a proximate result of defendant's acts of age discrimination against plaintiff, plaintiff has suffered substantial damages, including loss of income and benefits and other economic losses, and is entitled to appropriate relief pursuant to the ADEA, including compensatory and liquidated damages, and reasonable attorneys' fees and costs for her representation pursuant to 29 U.S.C. § 626.

### SECOND CLAIM FOR RELIEF
### Wrongful Discharge in Violation of the Public Policy of North Carolina- Age Discrimination

32. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

33. The public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, mandates that employers of fifteen or more employees shall not discriminate on the basis of age. At all times pertinent to this claim, defendant employed in excess of fifteen employees.

34. As stated above, plaintiff was a member of a protected age class, who was, at the time of her termination, consistently performing at a level higher than substantially younger employees who were similarly situated; and, subsequent to her discharge, a substantially younger employee who was less experienced and qualified for the job assumed her duties while performing at a lower level than plaintiff.

35. Defendant's reasons for its termination of plaintiff were pretextual, and unworthy of belief.

36. Defendant wrongfully and intentionally discriminated against plaintiff because of her age in violation of the public policy of North Carolina, as follows:

   a. By hiring a second OS for plaintiff's region in order to terminate plaintiff;
   b. By selecting a replacement that was substantially younger, less qualified, less experienced, and was a poorer performer;
   c. By failing to offer plaintiff a comparable alternative position with the company;
   d. By manufacturing multiple false and baseless reasons for the termination; and
   e. In terminating plaintiff's employment.

37. Plaintiff will suffer irreparable harm in the absence of equitable relief from this Court, and there is no adequate remedy at law to prevent such harm. Accordingly, plaintiff is entitled to declaratory, injunctive and equitable relief including reinstatement of plaintiff to her position with defendant.

38. As a proximate result of defendant's violations of the public policy of North Carolina, plaintiff has incurred and suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of quality and enjoyment of life, and employment reputation; and other losses to be proven at trial.

39. Defendant's acts, as described above, were deceptive, willful and wanton, and evinced an intentional or reckless indifference to and disregard for the civil rights of plaintiff. Aggravating circumstances concerning defendants' conduct are provided in ¶¶ 8-23 above. Accordingly, plaintiff is entitled to punitive damages in an amount to be determined by the jury.

### THIRD CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy - Other

27. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

28. The public policy of North Carolina provides the following:

   a. The public policy of North Carolina prohibits employers from taking retaliatory action against an employee for asserting their rights with respect to the Occupational Safety and Health Act of North Carolina, N.C.G.S. § 95-126, *et seq.*;

   b. The public policy of North Carolina prohibits employers from taking retaliatory action against an employee for insisting on adherence to state and federal regulations, including HIPAA, labor laws, and the health code;

   c. The public policy of North Carolina prohibits retaliation against medical providers for following their duties and obligations in advocating for the rights, health and safety of their patients, as communicated in North Carolina General Statute § 90-659 and N.C.A.C. 61.0307;

    d. The public policy of North Carolina, as expressed in North Carolina General Statute § 95-78, and the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, requires that employees be permitted to engage in concerted activity for the purpose of improving the terms and conditions of their employment, and mandates that employees not be retaliated against for the same;

e. The public policy of North Carolina requires that an employee not be discharged or otherwise retaliated against for raising issues concerning the above public policies in the workplace;

f. The public policy of North Carolina requires that, in order to enforce the above policies, those employees who are in a position to know be protected in reporting such practices, and not retaliated against for making disclosures of unlawful acts;

g. It is a violation of the above public policies of North Carolina to retaliate against an employee who gave notice of the misconduct, and who objected to those actions. Such retaliation causes a chilling effect designed to prohibit and discourage such behaviors; and,

h. It is the public policy of North Carolina that an employee not be discharged or otherwise retaliated against for raising issues concerning the above public policies in the workplace, and for adhering to his or her duties as prescribed by both law and policy.

29. The defendant wrongfully discharged plaintiff in violation of the above public policies and laws of North Carolina.

30. As a direct and proximate result of the wrongful termination of plaintiff in violation of the public policy of North Carolina, plaintiff has suffered substantial damages, including but not limited to loss of income and benefits, loss of professional reputation, loss of quality and enjoyment of life, mental anguish and emotional distress, and other damages to be proven at trial.

31. The defendant's acts, as described above, were willful, wanton, and malicious, and evinced an intentional or reckless indifference to and disregard for the rights of plaintiff. Aggravating circumstances concerning defendant's conduct are provided in ¶¶ 8-23 above. Accordingly, plaintiff is entitled to punitive damages in an amount be determined by the jury in accordance with Chapter 1B of the North Carolina General Statutes.

## PRAYER FOR RELIEF

The plaintiff requests the following relief:

(1) That plaintiff be reinstated to her position with defendant, with back pay and all benefits and seniority rights;

(2) That plaintiff recover of defendants compensatory damages in an amount in excess of $100,000;

(3) That plaintiff recover liquidated damages pursuant to 29 U.S.C. § 626;

(4) That plaintiff recover punitive damages in an amount to be determined by the jury;

(5) That plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein as required in 29 U.S.C. § 626;

(6) That plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

(7) That this Court grant such other relief as it deems just and appropriate.

Pursuant to Rule 38(b) of the North Carolina Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

EXHIBIT A

This the 24th day of January, 2022.

_____
R. Michael Elliot (42806)
Attorney for Plaintiff
Elliot Morgan Parsonage, PLLC
300 E. Kingston Ave, Suite 200
Charlotte, NC 28203
Telephone: 704-707-3705
Facsimile: 336-724-3335
E-Mail: michaelelliot@emplawfirm.com